# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **14-06385-jw**
Adversary Proceeding Number: **14-80132-jw**

### ORDER DENYING MOTION FOR IMMEDIATE TURNOVER

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**12/23/2014**



*signature: John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 12/23/2014

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, <br><br> Jason Curtis Nelson, <br><br> Debtor(s). <br><br> Jason Curtis Nelson, <br><br> Plaintiff(s), <br><br> v. <br><br> Arlington Auto Exchange, <br><br> Defendant(s). | C/A No. 14-06385-JW <br><br> Adv. Pro. No. 14-80132-JW <br><br> Chapter 13 <br><br> **ORDER** |

This matter is before the Court on Debtor's Motion for Immediate Turnover, filed November 26, 2014. The Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and relates to the Chapter 13 bankruptcy case of Debtor Jason Curtis Nelson, C/A No. 14–06385, pending before the undersigned. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

## **FINDINGS OF FACT**

1. On October 28, 2013, Debtor submitted a Credit Application to Arlington Auto Exchange in connection with the financing and purchase of a 2002 Chevrolet Trailblazer ("vehicle") from Arlington Auto Exchange. $6,723.40 of the vehicle's total purchase price of $8,699.00 was financed and a related Security Agreement and Sales Contract were

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

completed and subsequently assigned to Summit Funding Corporation ("Summit"). The entirety of this transaction, including the formation and execution of the Security Agreement and Sales Contract, took place in the state of Florida. At the time of the financing and purchase of the vehicle, Debtor was a resident of Florida.

2. In December of 2013, Debtor received an offer of temporary employment which required him to relocate to the state of South Carolina. Debtor continued to use the vehicle as his primary means of transportation during and after his December relocation.

3. In May of 2014, Debtor was offered a full-time position with his South Carolina employer, which he accepted. Several months later, in August of 2014, Debtor was let go by his employer; Debtor remained in South Carolina while unemployed and continues to reside in the state today. The loss of his full-time employment income caused Debtor to fall behind on his payments on the vehicle.

4. Due to Debtor's default in payments, Summit exercised its rights as a secured party and repossessed the vehicle on October 29, 2014.[2]

5. On November 7, 2014, Debtor filed a voluntary Chapter 13 bankruptcy petition in this District with the goal of reorganizing his finances to cure child support arrears and exercise his purported right to redeem the vehicle. Debtor listed Arlington Auto Exchange as a secured creditor and requested an immediate turnover of the vehicle in light of his proposed Chapter 13 plan's provision of full payment over the life of the plan of Arlington Auto Exchange's secured claim, plus interest.

---

[2] Thus, Summit is the party which should have been named as the Defendant in this Adversary Proceeding, as correctly stated in Summit's December 12, 2014 Objection to Debtor's Motion for Immediate Turnover of the vehicle.

2

6. Debtor filed an Adversary Complaint on November 26, 2014, naming Arlington Auto Exchange as the Defendant. On the same day Debtor filed his Adversary Complaint, he also filed his Motion for Immediate Turnover of the vehicle ("Motion").

7. On December 12, 2014, Summit filed an Objection to Debtor's Motion asserting that Debtor should be barred from exercising the statutory right of redemption found in S.C. Code Ann. § 36–9–623,[3] despite prior holdings in this District which have declared the same statutory right of redemption to be property of the estate, thereby allowing repossessed collateral to be subject to turnover. Summit instead argues that Eleventh Circuit precedent interpreting Florida state law on redemption rights should apply here to prevent turnover because: (1) the vehicle was purchased from a Florida dealer; (2) the Security Agreement was signed by a long-term Florida resident holding a Florida driver's license; (3) the Security Agreement contains a choice of law provision stating that the "contract will be governed by applicable federal laws and the laws of the State of Florida,"; (4) the vehicle was registered and titled in Florida; and (5) a Florida insurance certificate affidavit was signed in relation to the vehicle.

8. On December 16, 2014, an expedited hearing was held on Debtor's Motion and Summit's Objection. Thereafter, in compliance with the Court's request at the hearing, counsel for Debtor submitted a Response to Summit's Objection on December 18, 2014. Summit submitted its Reply to Debtor's Response on December 19, 2014.

---

[3] Summit's Objection actually cites S.C. Code Ann. § 36–9–506 as the statute setting forth a right to redeem. The South Carolina Commercial Code was amended earlier this year and the actual source of this statutory right is now found in S.C. Code § 36–9–623.

3

**LAW & ANALYSIS**

Pursuant to 11 U.S.C. § 542(a),[4] this court is permitted to order a third-party to turnover to a debtor's bankruptcy estate any property in the third-party's possession which qualifies as "property of the estate" under § 541. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 200–209 (1983); *In re Moffett*, 356 F.3d 518 (4th Cir. 2004); *compare In re Kalter*, 292 F.3d 1350, 1352–53 (11th Cir. 2002). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). "Although federal law defines what property interests are included within the bankruptcy estate, state law determines the nature and existence of a debtor's property interests." *In re Katzburg*, 326 B.R. 606, 609 (Bankr. D.S.C. 2004) (citing *Moffett*, 356 F.3d at 521); *see, e.g.*, *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). In the instant case, Debtor argues that South Carolina state law gives rise to the existence of a property interest held by Debtor through a right to redeem the vehicle which has been repossessed, but not yet disposed of, by Summit. In the alternative, Summit argues Florida state law is the appropriate lens through which Debtor's interest in the vehicle must be determined.

Under S.C. Code Ann. § 36–9–623,[5] a debtor may redeem collateral as long as the secured party has not collected, disposed of, contracted for the disposition of, or accepted the collateral. *See* UCC § 36–9–623, *Official Cmt. 2* (2014). Debtor relies on Fourth Circuit precedent and case law from this District regarding choice of law questions related to the determination of property rights in support of his argument that the statutory right of redemption found in UCC § 36–9–623 requires Summit to turnover the vehicle to Debtor.

---

[4] Further reference to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) shall be by section number only.
[5] Further reference to the South Carolina Commercial Code (S.C. Code Ann. § 36–1–101 *et seq.*) shall be listed as "UCC," followed by the section number.

4

Specifically, Debtor refers to *In re Merritt Dredging Co.*, 839 F.2d 203 (4th Cir. 1988), which states in pertinent part that:

> In *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), the Supreme Court held that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. The *Klaxon* rule rested on the rationale that a federal court, in determining state law issues which arise in federal court only by the accident of diversity, must apply state law, including state conflict of law rules, to those issues. *Id.*; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). That same principle applies where a federal court addresses state law claims under its pendent jurisdiction. *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir. 1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977).

*Merritt Dredging*, 839 F.2d at 205.

In discussing the "wrinkle" within the "question of what choice of law rules should be applied by a bankruptcy court . . . in determining *which* state's law to apply" in a situation similar to that which is presented by Debtor's Motion, the Fourth Circuit in *Merritt Dredging* held that "in the absence of a compelling federal interest which dictates otherwise, the *Klaxon* rule should prevail where a federal bankruptcy court seeks to determine the extent of a debtor's property interest." *Id.* at 205–06 (emphasis in original). Thus, this Court must apply the conflict of law rules contained within South Carolina state law to determine whether South Carolina or Florida law governs the extent of Debtor's legal or equitable interest, if any, in the vehicle through any applicable right of redemption; the Court does not find a compelling federal interest that would require a different conclusion. Therefore, it is true that the principles of *Merritt Dredging* and its progeny are applicable to this case, but not in a manner favorable to Debtor's position. Instead, the *Merritt Dredging*

5

holding and the analysis of South Carolina conflict of law provisions which it requires support Summit's position: Florida law governs the rights of Debtor and Summit in the vehicle.

Pursuant to the *Klaxon* rule, as adopted by the Fourth Circuit in *Merritt Dredging* and argued by Debtor as applicable to his case, South Carolina's Commercial Code ("UCC") and its choice of law principles are the state laws through which Debtor's property interest in the vehicle must be examined. "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the [C]ourt will honor this choice of law." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 727 (D.S.C. 2007). Beyond this general choice of law principle embodied in cases interpreting South Carolina law, the UCC offers additional statutory guidance on the issue. In *Merritt Dredging*, for example, the Fourth Circuit reviewed UCC § 36–1–301,[6] which sets forth a choice of law provision relevant to the circumstances present in this case. UCC § 36–1–301 states in pertinent part that "when a transaction bears a reasonable relation to this State and also to another state or nation, the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties." UCC § 36–1–301(a).[7] Therefore, Debtor's entrance into the Security Agreement, now assigned to Summit by Arlington Auto Exchange, which expressly states that the "contract will be governed by applicable federal laws and the laws of the State of Florida" indicates the parties' agreement that the law of another state, namely Florida, shall govern their rights and duties in relation

---

[6] As previously noted, South Carolina recently enacted amendments to its UCC. UCC § 36–1–301 was formerly cited as UCC § 36–1–105; references to the latter in *Merritt Dredging* refer to the same choice of law provision that is now stated in UCC § 36–1–301. Though certain additions and deletions have been made with the amendment, the choice of law portion relevant to this matter remains the same.

[7] Pursuant to UCC § 36–1–102, Chapter 1 of the UCC in which the aforementioned choice of law principle is found is applicable to transactions governed by other chapters of the UCC, including the chapter governing security agreements (Chapter 9).

6

to the vehicle.[8] The Security Agreement was entered into between a Florida corporation (Arlington Auto Exchange) and a long-term Florida resident (Debtor) and involves a vehicle which was actually purchased *in* Florida and subsequently titled, registered, and insured in accordance with Florida state law. As a result, Florida state law—which under these circumstances does not allow for Debtor to exercise a right of redemption—must apply. *See Kalter*, 292 F.3d at 1353 (holding that under Florida law vehicles repossessed pre-petition due to debtor's default in payments are not property of Chapter 13 bankruptcy estate).

Unlike South Carolina law, the state laws of Florida do not consider the right to redeem a vehicle repossessed pre-petition to be a legal or equitable interest possessed by a debtor which would allow for the repossessed vehicle to qualify as "property of the estate" under § 541. *See id*. Under Florida law,

> [a] Chapter 13 debtor's statutory right to redeem a vehicle is insufficient to render a repossessed vehicle property of the estate where the debtor takes no affirmative steps towards redemption, for example, by tendering "fulfillment of all obligations secured by the collateral as well as the expenses incurred by the secured party in preparing for the disposition of the collateral."

*In re Lindo-Dmyfryk*, No. 6:09–bk–06721–KSJ, 2009 WL 3013498, at *1 (Bankr. M.D. Fla. 2009) (quoting *Kalter*, 292 F.3d at 1354) (referencing Florida Statute § 679.506, predecessor to Florida Statute § 679.623, governing the right to redeem collateral in Florida as of

---

[8] To the extent the vehicle is a good covered by a certificate of title and thus subject to UCC § 36–2A–105, the result is no different. UCC § 36–2A–105 states in pertinent part that:

> [W]ith respect to goods covered by a certificate of title issued under a statute of this State or of another jurisdiction, compliance and the effect of compliance or noncompliance with a certificate of title statute are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until the earlier of (a) surrender of the certificate, or (b) four months after the goods are removed from that jurisdiction and thereafter until a new certificate of title is issued by another jurisdiction.

The facts show that the vehicle remains titled under Florida statute. *See* Summit Obj. at p.3.

7

January 1, 2002).   In the instant case, Debtor's proposed Chapter 13 plan in his related bankruptcy case does not take the necessary "affirmative steps towards redemption." *Id*. Debtor's has not evidenced any intent to tender to Summit the entire sum owed to properly redeem the vehicle under Florida law.  Instead, Debtor's proposed Chapter 13 plan provides only for payment of the full balance owed on the vehicle for redemption *over the life of the plan*. "Payment over time in a Chapter 13 plan does not equal a tender of the entire balance due under Florida [law governing redemption] . . . ." *Id*.

## CONCLUSION

As discussed above, the applicable South Carolina conflict of law requires the Court to honor the Security Agreement's choice of law provision.  Debtor's interest in the vehicle and any related right to redeem is, therefore, properly determined under Florida law as agreed by the parties upon execution of the Security Agreement and Sales Contract.  Florida law states that a debtor's right to redeem is insufficient to qualify a vehicle repossessed pre-petition as property of the bankruptcy estate, particularly where a debtor does not propose to tender in a single payment the entire balance owed to the secured creditor immediately upon redemption under Florida law.  Therefore, Debtor's Motion is **DENIED**.

**AND IT IS SO ORDERED.**